## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DONNA LANGAN<br>(a.k.a. PETER KEVIN LANGAN),<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF PRISONS, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 21-cv-2524-DLF

## OFFICIAL CAPACITY DEFENDANTS' MOTION TO
## DISMISS IN PART AND FOR PARTIAL SUMMARY JUDGMENT

Defendants Federal Bureau of Prisons and, in their official capacities, Michael Carvajal, Elizabete Stahl, Ian Connors, Alison Leukefeld, Shannon Robbins, Don Lewis, and Jennifer Epplin (collectively, "Defendants") respectfully move the Court for summary judgment under Rule 56 as to count one of the complaint. Defendants also move to dismiss counts two through four under Rule 12(b)(6). A statement of material facts not in dispute, memorandum of law, declaration, exhibits, and proposed order are attached.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

*/s/Joshua M. Kolsky*
Joshua M. Kolsky
John J. Robinson
Trial Attorneys
United States Department of Justice
Federal Programs Branch
1100 L St. NW

Washington, DC 20530
Tel.:    (202) 305-7664
Fax:     (202) 616-8470
Email: joshua.kolsky@usdoj.gov

*Counsel for BOP and the Official-Capacity
Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DONNA LANGAN                    )
(a.k.a. PETER KEVIN LANGAN),    )
                                )
                  Plaintiff,    )
                                )    Case No. 21-cv-2524-DLF
                  v.            )
                                )
FEDERAL BUREAU OF PRISONS, *et al.*,  )
                                )
                  Defendants.   )


**STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

Pursuant to Local Rule 7(h), Defendants respectfully submit this Statement of Material Facts Not in Dispute in support of Defendants' Motion for Partial Summary Judgment.

1.    Plaintiff Donna Langan is an inmate within the custody of the Federal Bureau of Prisons ("BOP").  Complaint ¶ 2.

2.    Plaintiff has been diagnosed with gender dysphoria.  *Id*. ¶ 8.

3.    Since at least 2012, BOP rendered care to Plaintiff for treatment of her gender dysphoria, including hormone therapy, counseling/psychotherapy, and designation to a women's facility.  *Id*. ¶¶ 60, 83.

4.    BOP's Transgender Executive Council ("TEC") is responsible for offering "advice and guidance on unique measures related to treatment and management needs of transgender inmates. . . including training, designation issues, and reviewing all transfers for approval."  Ex. A (Transgender Offender Manual) at 4.

5.    On October 12, 2021, the TEC determined that Plaintiff met all milestones and individual goals for gender confirmation surgery consideration.  Exhibit D (TEC Minutes).  The

1

TEC issued a referral to the BOP Medical Director for medical review and determination of medical appropriateness of Plaintiff for potential gender confirmation surgery and subsequent referral to a gender confirmation surgeon.  Declaration of Jeffrey Burkett, Ex. A.

6.      BOP completed an individualized comprehensive medical assessment of Plaintiff. On January 27, 2022, BOP's Medical Director, Dr. Elizabete Stahl, issued a memorandum stating that "[i]nmate Langan has been approved to begin the surgical consultation process for gender affirming surgery."  *Id*.

7.      Since Dr. Stahl issued her approval memorandum, BOP has begun the procurement process to retain a surgeon or surgeons to perform gender confirmation surgeries on Plaintiff. Declaration of Jeffrey Burkett ¶¶ 3-10.

<div style="margin-left:40%">

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

*/s/Joshua M. Kolsky*
Joshua M. Kolsky
John J. Robinson
Trial Attorneys
United States Department of Justice
Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel.:    (202) 305-7664
Fax:    (202) 616-8470
Email: joshua.kolsky@usdoj.gov

*Counsel for BOP and the Official-Capacity Defendants*

</div>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| DONNA LANGAN | ) | |
| (a.k.a. PETER KEVIN LANGAN), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 21-cv-2524-DLF |
| v. | ) | |
| | ) | |
| FEDERAL BUREAU OF PRISONS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
**<u>IN PART AND FOR PARTIAL SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 2

I.      BOP Policies Concerning Transgender Inmates ................................................. 2

II.     Plaintiff's Treatment by BOP ............................................................................. 6

LEGAL STANDARD .................................................................................................... 7

I.      Rule 12(b)(6) ..................................................................................................... 7

II.     Rule 56 .............................................................................................................. 8

ARGUMENT ................................................................................................................. 9

I.      The Court Should Enter Summary Judgment for Defendant on Plaintiff's Eighth
        Amendment Claim Based on the Alleged Denial of Medical Care ..................... 9

II.     The Complaint Fails to Plead Plausible Discrimination Claims ....................... 14

III.    The Court Should Dismiss Plaintiff's Claims Against Individual BOP Employees in
        Their Official Capacities ................................................................................... 18

CONCLUSION ............................................................................................................ 19

## TABLE OF AUTHORITIES

### Cases

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .......................................................................................................... 8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................... 6, 15, 16

*Banks v. York*,
    515 F. Supp. 2d 89 (D.D.C. 2007) ..................................................................................... 9, 10

*Barr v. Pearson*,
    909 F.3d 919 (8th Cir. 2018) ............................................................................................ 10

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................... 7, 8, 15

*Brown v. Wilson*,
    No. 3:13CV599, 2015 WL 3885984 (E.D. Va. Jun. 23, 2015) ............................... 10

*Campbell v. Kallas*,
    936 F.3d 536 (7th Cir. 2019) ............................................................................................ 17

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ........................................................................................................ 8, 9

*Conant v. Wells Fargo Bank, N.A.*,
    24 F. Supp. 3d 1 (D.D.C. 2014) .......................................................................................... 2

*Conley v. Gibson*,
    355 U.S. 41 (1957) ............................................................................................................ 7

*Cooke-Seals v. District of Columbia*,
    973 F. Supp. 184 (D.D.C. 1997) ......................................................................................... 18

*De'lonta v. Johnson*,
    708 F.3d 520 (4th Cir. 2013) ............................................................................................ 13

*Diamond v. Atwood*,
    43 F.3d 1538 (D.C. Cir. 1995) ............................................................................................ 8

*Edmo v. Corizon, Inc.*,
    935 F.3d 757 (9th Cir. 2019) ............................................................................................ 13

*Edwards v. Rubin*,
   No. 10-452, 2011 U.S. Dist. LEXIS 168133 (D.D.C. Mar. 3, 2011) ........................................ 18

*Erickson v. Pardus*,
   551 U.S. 89 (2007) ................................................................................................................... 7

*Estelle v. Gamble*,
   429 U.S. 97 (1976) ....................................................................................................... 9, 10, 14

*Farmer v. Brennan*,
   511 U.S. 825 (1994) ............................................................................................ 10, 11, 12, 14

*Gibson v. Collier*,
   920 F.3d 212 (5th Cir. 2019) ................................................................................................ 9, 13

*Helling v. McKinney*,
   509 U.S. 25 (1993) ................................................................................................................ 10, 11

*Jovanovic v. US-Algeria Bus. Council*,
   561 F. Supp. 2d 103 (D.D.C. 2008) ...................................................................................... 7

*Keohane v. Fla. Dep't of Corrs. Sec'y*,
   952 F.3d 1257 (11th Cir. 2020) ............................................................................................ 13

*Kentucky v. Graham*,
   473 U.S. 159 (1985) .............................................................................................................. 18

*Kosilek v. Spencer*,
   774 F.3d 63 (1st Cir. 2014) ............................................................................................ 11, 13

*Lamb v. Norwood*,
   899 F.3d 1159 (10th Cir. 2018) ........................................................................................... 13

*Levitan v. Ashcroft*,
   281 F.3d 1313 (D.C. Cir. 2002) ........................................................................................... 15

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ............................................................................................................... 8

*Monell v. New York City Dep't of Social Servs.*,
   436 U.S. 658 (1978) .............................................................................................................. 18

*Peters v. District of Columbia*,
   873 F. Supp. 2d 158 (D.D.C. 2012) ..................................................................................... 15

*Rosario v. Brawn*,
    670 F.3d 816 (7th Cir. 2012) ........................................................................................ 9

*Turner v. Safley*,
    482 U.S. 78 (1987) ...................................................................................................... 15

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977) .................................................................................................... 15

*Washington v. Harper*,
    494 U.S. 210 (1990) .................................................................................................... 15

*Westlake v. Lucas*,
    537 F.2d 857 (6th Cir. 1976) ...................................................................................... 10

*Wittkowski v. Levine*,
    382 F. Supp. 3d 107 (D. Mass. 2019) ......................................................................... 13

*Wright v. Collins*,
    766 F.2d 841 (4th Cir. 1985) ...................................................................................... 10

## INTRODUCTION

Plaintiff Donna Langan is a transgender woman currently incarcerated at the Federal Medical Center Carswell in Fort Worth, Texas. In her Complaint, Plaintiff brings claims under the Eighth Amendment, the equal protection component of the Fifth Amendment, and the anti-discrimination provision of the Affordable Care Act against the BOP and federal prison officials based on allegedly inadequate medical care.

For the reasons explained below, the Court should grant summary judgment for Defendants as to count one and dismiss counts two through four.[1] As to count one, BOP has recently approved Plaintiff to begin the surgical consultation process for gender confirmation surgery, and it is now working to retain a surgeon or surgeons to provide that surgery to Plaintiff. Plaintiff also has received regular, constitutionally sufficient medical care and accommodations for her gender dysphoria, in the form of regular visits with physicians, hormone therapy, mental health counseling, and placement in a female correctional institution. Plaintiff has, at most, shown a disagreement with Defendants' decisions regarding the course of treatment for her gender dysphoria, but a mere disagreement falls well short of the level of deliberate indifference required to show an Eighth Amendment violation.

Next, Plaintiff's constitutional and statutory claims alleging discrimination based on her transgender status should be dismissed. Plaintiff tries to show that she has been treated less favorably when compared to cisgender prisoners. However, she is not similarly situated to those prisoners for purposes of gender confirmation surgery because such surgery implicates unique medical and penological interests for BOP.

---

[1] This Motion seeks relief on behalf of BOP and the individual defendants in their official capacities. A separate motion is being filed today on behalf of the individuals in their personal capacities.

1

Accordingly, the Court should dismiss counts two through four and enter summary judgment for Defendants on Count One.

## FACTUAL BACKGROUND

### I. BOP Policies Concerning Transgender Inmates

BOP has promulgated several program statements that govern the placement and provision of care to transgender inmates. These program statements include the Transgender Offender Manual ("Manual"), which was recently updated and provides guidance concerning the identification, tracking, and provision of services to the transgender inmate population, Ex. A, and the Medical Management of Transgender Inmates Guidance, which "provides recommendations for the medical management and treatment of transgender inmates," Ex. B ("Medical Management Guidance").[2]

There are different groups of subject matter experts within BOP responsible for addressing various aspects of the needs of transgender inmates. Ex. A. For example, the Transgender Executive Council ("TEC") comprises staff members from BOP's Women and Special Populations Branch, Psychology Services Branch, Health Services Division, and Designation and Sentencing Computation Center, and is responsible for offering "advice and guidance on unique measures related to treatment and management needs of transgender inmates . . . including training, designation issues, and reviewing all transfers for approval." *Id*. at 3-4.

---

[2] In deciding a Rule 12(b)(6) motion, "a court may consider 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint,' or 'documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss.'" *Conant v. Wells Fargo Bank, N.A.*, 24 F. Supp. 3d 1, 11 (D.D.C. 2014). Here, the Complaint incorporates and relies on the Manual and the Medical Management Guidance. *See* Compl. ¶¶ 64, 68. The Court may also consider documents outside of the Complaint for purposes of Defendants' Motion for Partial Summary Judgment.

The Women and Special Populations Branch ("WSPB") is BOP's "primary source and point of contact on accommodation/transition, classification, management, and intervention/treatment programs and practices for transgender inmates in [BOP's] custody." *Id*. at 3. Among other responsibilities, the WSPB ensures that BOP offers appropriate services to transgender inmates, develops and implements staff training on transgender issues, and develops and monitors monthly reports on the transgender inmate population and institutional programs. *Id*. BOP's Health Services Division is responsible for the oversight of all medical and psychiatric guidance and treatment for transgender inmates in secure BOP facilities. *Id*. at 4. The Medical Director of the Health Services Division provides clinical guidance on "the most current research-driven clinical medical and psychiatric care of transgender inmates" to staff members. *Id*. In the event the TEC refers a request for gender confirmation surgery to the Medical Director, the Medical Director makes the determination as to whether to refer the gender confirmation surgery request to a surgeon. *Id*. The Psychology Services Branch oversees all mental health programs and services concerning transgender inmates, including "providing advice and guidance on the identification and evaluation of transgender inmates, and making recommendations for the treatment needs of transgender inmates." *Id*. at 4.

The Manual also contains provisions concerning "Housing and Programming Assignments" for transgender inmates. *Id*. at 6-7. In the event of a request to transfer facilities related to an individual's transition, the case will be considered by the TEC. *Id*. at 7. The Manual specifically addresses requests for gender confirmation surgery and provides that "surgery may be the final stage in the transition process and is generally considered only after one year of clear conduct and compliance with mental health, medical and programming services at the gender affirming facility," which is a facility for individuals that share the individual's gender identity.

*Id*. at 9.  The Manual provides that, as a general rule, once that one-year period at the gender-affirming facility is complete, an inmate may submit a surgery request to the Warden, who will forward the request to the TEC.  *Id*.  If the TEC determines that all milestones and goals for surgical consideration are satisfied, the TEC will refer the request to the Medical Director for medical consideration.  *Id*.  The Medical Director will then make an individualized determination as to whether gender confirmation surgery is appropriate for the individual, and, if so, refer the matter to a surgeon.  *Id*.

BOP's Medical Management Guidance provides clinical guidance for the treatment of transgender inmates.  Ex. B.  BOP's Medical Management Guidance recognizes a step-wise approach to the medical and mental health management of transgender inmates.  Ex. B at 10-11.  The Medical Management Guidance expressly recognizes that "gender-affirming surgery may be appropriate for some and is considered on a case-by-case basis."  *Id*. at 19.  Pursuant to the Medical Management Guidance, "[i]n addition to the eligibility and readiness criteria for hormone therapy, general criteria for consideration of surgery include at least 12 months of successful use of hormone therapy, participation in psychotherapy as clinically indicated, full-time experience in their preferred gender, and consolidation of gender identity."  *Id*.

Standards of care published by the World Professional Association for Transgender Health ("WPATH SOC"), an independent organization, sets forth certain guidelines for the treatment of gender dysphoria, but does not purport to be a one-size-fits-all set of binding standards.  Ex. C.[3]  While the BOP Medical Management Guidance provides a reference to the WPATH SOC in a

_____

[3] As with the Manual and Medical Management Guidance, this Court may consider the WPATH SOC even though it is a document outside of the Complaint because Plaintiff specifically alleges in the Complaint that Defendants failed to abide by the WPATH SOC.  *See* Compl. ¶¶ 48-62.  And the Court can also consider the WPATH SOC in connection with Defendants' motion for partial summary judgment.

footnote labeled "[f]or further consideration," Ex. B at 10, nothing in any BOP policy purports to incorporate or be bound by the WPATH SOC. Indeed, by their own terms, the WPATH SOC are "flexible clinical guidelines" and recognize that "the criteria put forth in this document for hormone therapy and surgical treatments for gender dysphoria are clinical guidelines; individual health professionals and programs may modify them." Ex. C at 2. The WPATH SOC further recognize that "[c]linical departures from the SOC may come about because of a patient's unique anatomic, social, or psychological situation; an experienced health professional's evolving method of handling a common situation; a research protocol; lack of resources in various parts of the world; or the need for specific harm reduction strategies." *Id*.

With respect to gender confirmation surgery, the WPATH SOC recognize that genital surgery "is often the last and most considered step in the treatment process for gender dysphoria." *Id*. at 54. The WPATH SOC outline six criteria for vaginoplasty operations in female transgender patients:

1. Persistent, well-documented gender dysphoria;

2. Capacity to make a fully informed decision and to consent for treatment;

3. Age of majority in a given country;

4. If significant medical or mental health concerns are present, they must be well controlled;

5. 12 continuous months of hormone therapy as appropriate to the patient's gender goals (unless the patient has a medical contraindication or is otherwise unable or unwilling to take hormones);

6. 12 continuous months of living in a gender role that is congruent with their gender identity.

*Id*. at 60.

## II. Plaintiff's Treatment by BOP

The facts, as alleged in the Complaint, are as follows.[4]  Plaintiff Donna Langan is a transgender woman serving a life sentence within the custody of BOP.  Plaintiff has been diagnosed with gender dysphoria, which results from the discrepancy between a person's gender identity and that person's sex assigned at birth.  Compl. ¶¶ 8-9.  Since 1996, Plaintiff "has at various times requested all of the possible treatments for gender dysphoria, including designation to a women's facility to facilitate social transition, individualized psychotherapy, feminizing hormones and masculine hormone blockers, and vaginoplasty, breast augmentation, and permanent hair removal."  *Id*. ¶ 82.  During her incarceration, BOP medical staff have repeatedly assessed Plaintiff and have affirmed her diagnosis of gender dysphoria.  *Id*. ¶¶ 11-12.  And since 2012, BOP "has been rendering some forms of gender affirming care to Ms. Langan, including hormone therapy, counseling, and designation to a women's facility."  *Id*. ¶ 83; *see also id*. ¶ 91 (Plaintiff was designated to a women's facility in 2016).  Plaintiff contends that these forms of care have not adequately treated her gender dysphoria and that genital surgery is necessary.  *Id*. ¶¶ 84-85.

Although not alleged in the Complaint, for purposes of Defendants' Motion for Partial Summary Judgment, the Court can consider the fact that on January 27, 2022, the BOP Medical Director, Dr. Stahl, issued a memorandum explaining that the TEC had determined that Plaintiff "met all milestones and individual goals for gender affirming surgery consideration."  Declaration of Jeffrey Burkett, Ex. A.  The TEC referred the case to the Health Services Division "for medical review and determination of medical appropriateness of inmate Langan for potential gender

---

[4] For the purposes of the Rule 12(b)(6) motion to dismiss, the factual allegations contained in the Complaint are accepted as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  However, nothing in this recitation of facts should be construed as an admission as to any of these allegations.

affirming surgery and subsequent referral to a gender affirming surgeon." *Id.* "An individualized comprehensive medical assessment has been completed" and "[i]nmate Langan has been approved to begin the surgical consultation process for gender affirming surgery." *Id.* Since the Health Services Division issued its approval, BOP has begun the procurement process to retain a surgeon or surgeons to perform gender confirmation surgeries on Plaintiff. Burkett Decl. ¶¶ 3-10.

## **LEGAL STANDARD**

### I.    **Rule 12(b)(6)**

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. In ruling on a motion to dismiss, the Court "must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." *Jovanovic v. US-Algeria Bus. Council*, 561 F. Supp. 2d 103, 110 (D.D.C. 2008). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Rule 12(b)(6). The Court noted that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests[.]'" *Id.* at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 (1957)); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Although "detailed factual allegations" are not necessary to survive a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The Court stated that while there was no "probability requirement at the pleading stage," *id.* at 556, "something beyond . . . mere possibility . . . must be alleged[.]" *Id.* at 557-58. The facts alleged

"must be enough to raise a right to relief above the speculative level," *id*. at 555, or must be sufficient "to state a claim for relief that is plausible on its face." *Id*. at 570.

### II.     Rule 56

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). Summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the overall design of the rules of civil procedure, which is to secure the just, speedy, and inexpensive determination of every action. *Celotex Corp*., 477 U.S. at 327. Indeed, the "very mission" of Rule 56 is "to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56(e) (advisory committee note).

Where no genuine dispute exists as to any material fact, summary judgment is required. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A genuine issue of material fact is one that could change the outcome of the litigation. *Id*. at 247. The party moving for summary judgment need not prove the absence of an essential element of the nonmoving party's case. *Celotex Corp.*, 477 U.S. at 325. "The burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the non-moving party's case." *Id*. Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). Rule 56

requires that the party opposing summary judgment go beyond the pleadings, and by affidavits, depositions, answers to interrogatories or admissions set forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

## ARGUMENT

### I.   The Court Should Enter Summary Judgment for Defendant on Plaintiff's Eighth Amendment Claim Based on the Alleged Denial of Medical Care

In Count One, Plaintiff alleges that Defendants violated the Eighth Amendment's prohibition on cruel and unusual punishment by not providing gender confirmation surgery to Plaintiff. Compl. ¶¶ 134-60. Plaintiff believes that Defendants' actions constitute "deliberate[] indifferen[ce]" to Plaintiff's medical needs. *Id.* ¶ 149. The Court should enter summary judgment in Defendants' favor on this claim. As discussed below, Plaintiff's own admissions and the undisputed evidence show that Plaintiff has received constitutionally sufficient medical and psychological treatment and accommodations for her gender dysphoria, and has alleged, at most, a disagreement with the course of her care, which is insufficient to show deliberate indifference. Importantly, Defendants even approved the specific treatment that Plaintiff requests—gender confirmation surgery. Defendants' careful and ongoing attention to Plaintiff's medical needs refutes any suggestion that they are being deliberately indifferent.

To establish a claim under the Eighth Amendment for denial of adequate medical care while incarcerated, Plaintiff must show that she suffers from a serious medical need and that prison officials are deliberately indifferent to that need. *See Banks v. York*, 515 F. Supp. 2d 89, 102 (D.D.C. 2007); *see also Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). Deliberate indifference "is a demanding standard." *Gibson v. Collier*, 920 F.3d 212, 215 (5th Cir. 2019). It imposes a "high hurdle," requiring a showing "approaching a total unconcern for the prisoner's welfare." *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012). Deliberate indifference must "constitute[]

unnecessary and wanton infliction of pain contrary to contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 32 (1993). It is "a state of mind more blameworthy than negligence," *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), and more akin to "criminal recklessness," *Barr v. Pearson*, 909 F.3d 919, 922 (8th Cir. 2018).

Establishing that Defendants were deliberately indifferent to Plaintiff's medical needs requires more than showing a mere difference of opinion regarding the appropriate medical care she has received or mere speculation about the medical care she might yet receive. *Estelle*, 429 U.S. at 104-05, 107; *Banks*, 515 F. Supp. 2d at 103 ("mere disagreement over the proper treatment" cannot support a finding of deliberate indifference). "Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference." *Brown v. Wilson*, No. 13-599, 2015 U.S. Dist. LEXIS 81456, at *15 (E.D. Va. June 23, 2015) (citing *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985)). Allegations that are akin to run-of-the-mill medical malpractice claims are insufficient to maintain a viable Eighth Amendment claim. *Estelle*, 429 U.S. at 104; *Farmer*, 511 U.S. at 835. Courts are reluctant to second-guess medical judgments when prisoners, like Plaintiff, have received medical attention and subsequently dispute the adequacy of that medical care. *See Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Instead, to establish an Eighth Amendment claim, Plaintiff must show that she was subject to a cruel and unusual punishment because Defendants were so deliberately indifferent to her serious medical needs as to unnecessarily and wantonly inflict pain. *Estelle*, 429 U.S. at 104. Because Plaintiff seeks injunctive relief, "deliberate indifference . . . should be determined in light of the prison authorities' current attitudes and conduct." *Farmer*, 511 U.S. at 845.

The Supreme Court repeatedly has affirmed that the Eighth Amendment does not authorize courts to second guess prison officials' decisions about how to balance competing interests within the constraints of the prison setting. *See, e.g.*, *Helling*, 509 U.S. at 36-37. Prison officials act with deliberate indifference in violation of the Eighth Amendment only if they "know[] of and disregard[] an excessive risk to inmate health or safety," a standard that "incorporates due regard for [officials'] unenviable task of keeping dangerous [individuals] in safe custody under humane conditions." *Farmer*, 511 U.S. at 837, 838, 845 (quotation marks omitted). For this reason, "[w]hen evaluating medical care and deliberate indifference, security considerations inherent in the functioning of a penological institution must be given significant weight." *Kosilek v. Spencer*, 774 F.3d 63, 83 (1st Cir. 2014) (citation omitted). Accordingly, "even a denial of care may not amount to an Eighth Amendment violation if that decision is based in legitimate concerns regarding prison safety and institutional security." *Id*. (citations omitted).

In this case, Plaintiff acknowledges that, for many years, BOP has treated her gender dysphoria, including by providing hormone therapy, psychotherapy, support for social transition, and placement in a female prison facility. *See* Compl. ¶ 83 ("Since 2012, the FBOP has been rendering some forms of gender affirming care to Ms. Langan, including hormone therapy, counseling, and designation to a women's facility."); *id*. ¶ 60 ("FBOP has provided Ms. Langan with three of the four recognized treatments for GD: changes to gender expression or role; hormone replacement therapy; and psychotherapy to promote resilience, address stigma, and increase self-esteem."). Plaintiff likewise concedes that BOP medical staff have repeatedly assessed her throughout the many years of her incarceration. *Id*. ¶ 12 ("FBOP medical staff have repeatedly assessed her[.]"); *id*. ¶ 141 ("Ms. Langan has been evaluated many times over the last more than thirty years[.]"). Plaintiff does not, and cannot, allege that Defendants ignored her gender dysphoria, or failed to provide her with care.

11

To be sure, Plaintiff's Complaint alleges that these treatments and accommodations have not adequately treated Plaintiff's gender dysphoria, Compl. ¶ 84, and that gender confirming surgeries are "medically necessary for the effective treatment of Ms. Langan's [gender dysphoria,]" *id*. ¶ 45. But BOP has not ignored Plaintiff's request for surgery. On the contrary, BOP has already approved Plaintiff to begin the surgical consultation process for gender confirmation surgery. Specifically, on January 27, 2022, the BOP Medical Director, Dr. Elizabete Stahl, issued a memorandum explaining that BOP's TEC had determined that Plaintiff "met all milestones and individual goals for gender affirming surgery consideration." Burkett Decl., Ex. A. "The TEC referred the case to the BOP Medical Director for medical review and determination of medical appropriateness of inmate Langan for potential gender affirming surgery and subsequent referral to a gender affirming surgeon." *Id*. "An individualized comprehensive medical assessment has been completed" and "[i]nmate Langan has been approved to begin the surgical consultation process for gender affirming surgery." *Id*. Since Dr. Stahl issued the approval memorandum, BOP has begun the procurement process to retain a surgeon or surgeons to perform gender confirmation surgeries on Plaintiff. Burkett Decl. ¶¶ 3-10.

As these facts make clear, Defendants are not being deliberately indifferent to Plaintiff's medical needs. Far from "disregarding an objectively intolerable risk of harm," *Farmer*, 511 U.S. at 846, BOP is actively engaged in the treatment of Plaintiff's gender dysphoria and is working to secure one or more physicians to perform gender confirmation surgeries. Although Plaintiff might have preferred BOP to approve surgery sooner than it did, that disagreement over the appropriate timing of surgery does not give rise to an Eighth Amendment violation. As noted above, the WPATH SOC recognize that surgery "is often the last and *most considered step* in the treatment process for gender dysphoria." *Id*. at 54 (emphasis added).

12

Courts have routinely rejected Eighth Amendment claims where prison officials treated the plaintiff's gender dysphoria.  For example, in *Gibson*, the Fifth Circuit ruled that the plaintiff could not contend that prison officials have been "deliberately indifferent to his serious medical needs" where the prison system "continues to treat [the plaintiff's] gender dysphoria through other means," such as "counseling and hormone therapy[.]"  *Gibson*, 920 F.3d at 224.  Likewise, in *Lamb v. Norwood*, 899 F.3d 1159 (10th Cir. 2018), the Tenth Circuit emphasized that "prison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants."  *Id*. at 1162; *id*. at 1163 (prison's treatment of the plaintiff's gender dysphoria was constitutionally sufficient because the plaintiff was receiving psychological counseling and hormone treatments).  And an en banc panel of the First Circuit held that a prison's decision not to provide gender confirmation surgery did not violate the Eighth Amendment where the prison provided non-surgical treatment options and the inmate simply disagreed with the prison's medical decisions.  *See Kosilek v. Spencer*, 774 F.3d 63, 90-91 (1st Cir. 2014) (en banc).[5]  Plaintiff's Eighth Amendment claim is even weaker here than in those cases because Defendants have not only provided years of medical care and accommodations for Plaintiff's gender dysphoria, but they are working to provide gender confirmation surgeries as well.

---

[5] *See also Wittkowski v. Levine*, 382 F. Supp. 3d 107, 115 (D. Mass. 2019) (applying *Kosilek* and rejecting claim for gender confirmation surgery); *cf. Keohane v. Fla. Dep't of Corrs. Sec'y*, 952 F.3d 1257, 1274 (11th Cir. 2020) (holding that it was not deliberate indifference for prison officials, weighing inmate's medical needs against institutional security concerns, to provide her with hormone therapy but not the social-transitioning remedies she sought); *but see Edmo v. Corizon, Inc.*, 935 F.3d 757, 785-98 (9th Cir. 2019) (affirming lower court determination that prison officials were deliberately indifferent to inmate's gender dysphoria by not providing her with gender confirmation surgery); *De'lonta v. Johnson*, 708 F.3d 520 (4th Cir. 2013) (reversing dismissal of complaint alleging Eighth Amendment violation based on prison officials' failure to provide gender confirmation surgery).

In short, Plaintiff's position is fundamentally that BOP should have approved surgery earlier than it did. But that issue is not only irrelevant at this point, *Farmer*, 511 U.S. at 845 ("deliberate indifference . . . should be determined in light of the prison authorities' current attitudes and conduct"), it also impermissibly seeks to substitute Plaintiff's own preferences for BOP's medical judgments. As noted above, a disagreement with medical professionals' determinations about the appropriate course of treatment, without more, falls well short of establishing the "deliberate indifference" to a medical need required to support a claim for an Eighth Amendment violation. *See Estelle*, 429 U.S. at 104-05, 107. This is particularly true in the correctional context, when a decision as to the appropriate course of treatment for Plaintiff's gender dysphoria may raise other concerns for prison officials regarding issues like institutional security and the appropriate facility in which Plaintiff should reside. *See Farmer*, 511 U.S. at 846-47 (holding courts must use "caution" in issuing injunctions in the prison context, lest they "enmesh[]" themselves "in the minutiae of prison operations.").

Defendants have provided Plaintiff with constitutionally adequate care for her gender dysphoria and are working to retain a surgeon or surgeons to perform gender confirmation surgeries. Plaintiff's disagreement with BOP's medical judgments does not give rise to a constitutional violation. Because there is no genuine issue for trial, the Court should enter summary judgment for Defendants on Count One.

## II.  **The Complaint Fails to Plead Plausible Discrimination Claims**

Counts Two, Three, and Four of the Complaint allege constitutional or statutory discrimination claims. Specifically, Counts Two and Three allege violations of the equal protection component of the Fifth Amendment's Due Process Clause, Compl. ¶¶ 161-87, and

Count Four alleges a violation of the anti-discrimination provision of the Affordable Care Act, *id.*
¶¶ 188-93.

In order for Plaintiff to proceed on these claims, her Complaint "must contain sufficient
factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556
U.S. at 678. A claim is facially plausible "when the plaintiff pleads factual content that allows the
court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*
This standard "demands more than" pleading "factual allegations [that] present a sheer possibility
that a defendant has acted unlawfully." *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 175
(D.D.C. 2012). The factual allegations "must be more than merely neutral or suggestive," and
Plaintiff must "nudge her claims across the line from conceivable to plausible." *Id.* (quoting
*Twombly*, 550 U.S. at 557 n.5). This analysis requires a "common sense, context- specific
examination of the pleadings to determine whether they plausibly give rise to an entitlement to
relief." *Id.*

Here, Plaintiff fails to allege sufficient facts giving rise to a claim that she was denied
medical treatment because she is transgender. *See Vill. of Arlington Heights v. Metro. Hous. Dev.
Corp.*, 429 U.S. 252, 265 (1977) (equal protection violation requires intent to discriminate).[6]
Rather, she merely makes conclusory, boilerplate assertions such as: "Defendants have denied
Plaintiff necessary medical care because she is transgender, because she is attempting to transition
genders, and/or because of Defendants' sex-based belief that people who are assigned male at birth

---

[6] Although the Court need not determine the level of scrutiny to apply in this instance because
Plaintiff's claims fail even under heightened scrutiny, Defendants note that in the prison context,
courts typically analyze allegedly discriminatory prison practices under the standard set forth in
*Turner v. Safley*, 482 U.S. 78, 89 (1987). Under the *Turner* test, differential treatment is
permissible if it is "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89;
*Levitan v. Ashcroft*, 281 F.3d 1313, 1315 (D.C. Cir. 2002). Courts generally apply the *Turner* test
even where the allegedly infringed constitutional right would otherwise warrant heightened
scrutiny. *See Washington v. Harper*, 494 U.S. 210, 224 (1990).

should not receive medically necessary care that alters their genitalia, although cisgender prisoners may undergo identical procedures without interference or delay," Compl. ¶ 165; and "Defendants discriminated against Plaintiff because of sex, sex stereotyping, and/or gender identity pursuant to official policies, procedures, customs, and/or practices," *id*. ¶ 166.  Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" under Rule 12.  *Iqbal*, 556 U.S. at 678.  Beyond stating these types of legal conclusions, Plaintiff's Complaint fails to allege specific facts necessary to give rise to an inference of discrimination.  *See Johnson v. Cook*, No. 19-1464, 2021 U.S. Dist. LEXIS 123147, at *54-55 (D. Conn. July 1, 2021) (dismissing equal protection claim "[b]ecause Plaintiff has not stated a plausible claim that Defendants intentionally discriminated against her or treated her differently than other similarly situated inmates because of her gender identity or transgender status").  Indeed, Plaintiff's own allegations refute the idea that BOP has withheld medical treatment from Plaintiff because she is transgender—the Complaint acknowledges that BOP has provided medical treatment for Plaintiff's gender dysphoria, including hormone therapy and psychotherapy.  *See* Compl. ¶¶ 60, 83.

Plaintiff attempts to meet her pleading burden by alleging that BOP treats cisgender inmates differently than Plaintiff with regard to the provision of medical care.  For instance, the Complaint alleges that a cisgender male inmate suffering from testicular cancer or a cisgender female inmate suffering from breast cancer would not be subject to the same BOP policies that pertain to Plaintiff's request for gender confirmation surgery.  Compl. ¶¶ 75, 77.  And the Complaint alleges that BOP has bodies that exist to make decisions regarding some of the medical care of transgender prisoners, but there is no body that oversees medical care specifically for cisgender prisoners.  *Id*. ¶¶ 73-79.

16

Courts routinely reject similar claims on the grounds that transgender and cisgender inmates are not similarly situated for purposes of certain medical procedures. For example, the plaintiff in *Campbell v. Kallas* challenged a prison's failure to provide her with gender confirmation surgery on equal protection grounds. No. 16-cv-261, 2018 U.S. Dist. LEXIS 76144, at *27 (W.D. Wis. May 4, 2018) reversed on other grounds, *Campbell v. Kallas*, 936 F.3d 536 (7th Cir. 2019). The plaintiff argued that the prison's denial of the plaintiff's request for surgery violated the Equal Protection clause because cisgender female inmates were able to receive medically necessary vaginoplasty to treat conditions other than gender dysphoria. *Id*. at *28. The court rejected the plaintiff's claim because it found that cisgender inmates were not similarly situated to the transgender plaintiff, as clinical guidelines for recommending the procedure to treat specific conditions were different. *Id*. at *29-30. "Employing different decision-making policies for different types of medical procedures does not violate the Equal Protection Clause." *Id*. at *30.

Another federal district court similarly found that a transgender inmate, who alleged she was "being denied sex reassignment surgery, while cisgender female inmates suffering from cystocele (a prolapsed or dropped bladder) or rectocele (a herniation of the front wall of the rectum into the back wall of the vagina) are provided with surgical treatments for their conditions. . . is not 'similarly situated' to the prisoners she uses as a basis of comparison[.]" *Williams v. Kelly*, No. 17-12993, 2018 U.S. Dist. LEXIS 158119, at *29 (E.D. La. Aug. 27, 2018), adopted by district court, *Williams v. Kelly*, No. 17-12993, 2018 U.S. Dist. LEXIS 157002, at *1 (E.D. La. Sep. 14, 2018). Thus, her equal protection claim failed. *Id*.

Similarly, Plaintiff here argues that she—a transgender woman—is treated differently than cisgender inmates because she is subject to a more onerous policy to receive gender confirmation surgery. *See, e.g.*, Compl. ¶¶ 175-87. But Plaintiff is not similarly situated to cisgender inmates

17

seeking surgery because the inquiry into the medical necessity of such surgeries is different. An inmate seeking a mastectomy to treat gender dysphoria must undergo a different medical evaluation than a cisgender woman seeking a mastectomy to treat breast cancer. And given the sex-segregated nature of federal prisons, unique penological interests are necessarily implicated by a medical procedure that changes an inmate's sexual organs. For these reasons, the patients are not similarly situated. Counts Two, Three, and Four should be dismissed.

### III. The Court Should Dismiss Plaintiff's Claims Against Individual BOP Employees in Their Official Capacities

In addition to raising claims against BOP for injunctive relief, Plaintiff also has asserted identical claims seeking identical relief against a number of BOP employees in their official capacity. Suits brought against individuals in their official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)). "Because it is duplicative to name both a governmental entity and the entity's employees in their official capacity, claims against individuals named in their official capacity have been routinely dismissed as 'redundant and an inefficient use of judicial resources.'" *Barnes v. District of Columbia*, No. 03-2547, 2005 U.S. Dist. LEXIS 10435, at *9 (D.D.C. May 24, 2005) (quoting *Cooke-Seals v. District of Columbia*, 973 F. Supp. 184, 187 (D.D.C. 1997)); *see also King v. District of Columbia*, No. 11-1124, 2012 U.S. Dist. LEXIS 44294, at *1-2 (D.D.C. Mar. 30, 2012); *Edwards v. Rubin*, No. 10-452, 2011 U.S. Dist. LEXIS 168133, at *1 n.1 (D.D.C. Mar. 3, 2011).

Plaintiff acknowledges in her Complaint that BOP "is the federal executive agency charged with managing and regulating all federal penal and correctional institutions," and that it is "responsible for Ms. Langan's medical care[.]" Compl. ¶ 18. Therefore, were the Court to

conclude that injunctive relief is appropriate here, Plaintiff could obtain such relief directly against BOP.  The inclusion of official capacity claims against federal officials seeking the identical injunctive relief is inappropriate.  Accordingly, the Court should dismiss the official capacity claims against Defendants Carvajal, Stahl, Connors, Leukefeld, Robbins, Lewis, and Epplin.

## **<u>CONCLUSION</u>**

For the reasons set forth above, Defendants respectfully request that this Court grant summary judgment in favor of Defendant as to Count One and dismiss Counts Two, Three, and Four.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

*/s/Joshua M. Kolsky*
Joshua M. Kolsky
John J. Robinson
Trial Attorneys
United States Department of Justice
Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel.:    (202) 305-7664
Fax:    (202) 616-8470
Email: joshua.kolsky@usdoj.gov

*Counsel for BOP and the Official-Capacity Defendants*